United States District Court
Southern District of Texas
**ENTERED**
September 29, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DELORES SAMUEL, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-02900 |
| | § | |
| CITY OF HOUSTON, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Two motions are pending before the Court: Defendant City of Houston's (City's) Motion to Dismiss, ECF No. 20, and Defendant Officer K. Drey's Motion to Dismiss, ECF No. 19. These motions were referred to Magistrate Judge Dena Hanovice Palermo for a report and recommendation (R&R). ECF No. 29. On August 2, 2023, Judge Palermo issued the R&R recommending that Drey's Motion be denied and that the City's Motion be granted in part and denied in part. ECF No. 32. Both Plaintiffs and Drey have filed objections to the R&R. ECF Nos. 33, 34.

For the reasons that follow, the Court **ADOPTS IN PART AND REJECTS IN PART** the Report and Recommendation. Accordingly, Drey's Motion to Dismiss is **DENIED**. The City's Motion is **GRANTED IN PART AND DENIED IN PART**.

## I.        BACKGROUND

Plaintiff Dolores Samuel is suing in her individual capacity. Plaintiff Maya Thorn is suing as next of friend of minor S.T. on behalf of the estate of Julius Kehyei. Plaintiffs allege that Officer K. Drey shot and killed Julius Kehyei despite Kehyei possessing no weapon or threatening police.

Many of the facts in this case are disputed. Plaintiffs allege the following facts.

On August 26, 2020, HPD officers, including Drey, responded to a vague call about a suspicious person. ECF No. 17 ¶ 16. When the officers arrived at the location of the supposed suspicious person, they observed Kehyei running. *Id.* Without knowing his identity, officers pursued him on foot to a nearby church, where he had stopped running and sat near or on a fence. *Id.* Kehyei was unarmed. *Id.* Police spoke with Kehyei "for some time" outside the church. *Id.* ¶ 18. Without Kehyei displaying a weapon or otherwise threatening Drey or others, Drey shot Kehyei once, causing Kehyei to fall to the ground in "excruciating pain." *Id.* Paramedics took Kehyei to the hospital, where he was pronounced dead. *Id.* ¶ 19. In a news conference later that morning, then HPD Chief Acevedo indicated that no gun was recovered from Kehyei's person nor was a gun found at the scene. *Id.* ¶ 20. Despite the numerous officers who witnessed the scene, there were no reports that Kehyei was observed tossing anything after the shooting, and no gun was found on his person. *Id.*

Defendants tell a different story. They argue that Kehyei did possess a weapon and that he was shot after he refused to cooperate with police, refused to surrender his firearm, and threatened to shoot police. ECF No. 19 at 18-20.

Plaintiffs contend that Drey shot and killed Kehyei "for no lawful or justifiable reason" and that Drey was not facing or reacting to an imminent threat of death or serious bodily injury. ECF No. 17 ¶ 22-23. They attribute Drey's actions to the City's failure to adequately train officers on "proper deescalation procedures and techniques" and use of "less than lethal force (e.g., taser guns and canines)." *Id.* ¶ 22, 29. They also argue that the City's unconstitutional use of force policies led to the shooting and that the City subsequently ratified Drey's unconstitutional conduct. *Id.* ¶ 32, 35. Plaintiffs assert that none of the officers involved were terminated, disciplined, or

2

required to attend additional training. *Id.* ¶ 27.

Further, Plaintiffs claim that the HPD has "a longstanding record of not providing HPD officers with adequate training, adequate supervision, or discipline, not preventing excessive force and extrajudicial killings by HPD officers and ratifying the wrongful conduct of officers." *Id.* ¶ 35. Plaintiffs continue that HPD "has a long and documented history of abiding instances of excessive force in a wide variety of circumstances, both in that officers routinely use more force than is necessary in a given situation, and . . . the City will keep evidence and investigations out of the public eye and let offending officers continue to serve with no consequences." *Id.* ¶ 36. They include allegations of numerous incidents where HPD officers used excessive force between 1998-2010, *id.* ¶¶ 38–61, descriptions of a prior officer involved shooting involving Drey, *id.* ¶ 60, and news articles detailing police shootings that occurred in 2022 and six shootings from around 2020, *id.* ¶ 37, 61.

On August 2, 2023, Judge Palermo issued an R&R, recommending that the Court deny Drey's Motion to Dismiss and grant in part and deny in part the City's Motion to Dismiss. ECF No. 32. Judge Palermo found that Drey's Motion should be denied because his conduct was clearly unconstitutional and he is not, at least at this stage, entitled to qualified immunity. ECF No. 32 at 24-34. Additionally, Drey's Motion took issue with Plaintiffs' capacity to bring this suit, whether the suit is timely, and whether a video of the police chief's news conference was incorporated into Plaintiffs' Complaint and ought to be considered by the Court on a 12(b)(6) motion. Judge Palermo found that Plaintiffs have capacity to bring this suit, that the suit is timely, and that the new conference was no incorporated into Plaintiffs' Complaint by reference. *Id.*

Judge Palermo also found that the City's Motion should be granted with respect to Plaintiffs' *Monell* claims. Plaintiffs asserted four theories of liability related to the City: (1) failure

to train; (2) failure to supervise; (3) ratification of Drey's unconstitutional conduct; and (4) maintaining a facially unconstitutional use-of-force policy. *Id.* Judge Palermo found that Plaintiffs failed to state a claim under all of these theories of liability. Additionally, she recommended that the City's Motion be denied with respect to Plaintiffs' excessive force claims against Drey.

Drey filed objections, ECF No. 33, Plaintiffs responded, ECF No. 36, and Drey replied, ECF No. 37. Plaintiffs also filed objections, ECF No. 34, the City of Houston responded, ECF No. 35, and Plaintiffs replied, ECF No. 38.

## II.     STANDARD OF REVIEW

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering such a motion, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A pleading need not contain detailed factual allegations but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).

Here, Plaintiffs and Defendant Drey have filed Objections to Judge Palermo's R&R. A party may file written objections to a proposed R&R within 14 days of being served with a copy.

4

28 U.S.C. § 636. If such objections are timely filed, a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* However, if no timely objection is made, the court need only review the R&R to determine whether it is "clearly erroneous or contrary to law." *Garcia v. Sessions*, 2018 WL 6732889, at *1 (S.D. Tex. Nov. 7, 2018) (quoting *Quinn v. Guerrero*, 863 F.3d 353, 358 (5th Cir. 2017)).

## III.    ANALYSIS

### A.  Drey's Motion to Dismiss

Drey objects to the R&R's findings that (1) the August 26, 2020 news conference was not incorporated into the Plaintiffs' Complaint by reference, (2) Thorn has capacity to  bring this suit as next of friend to Keheyi's child, S.T., (3) the pleadings sufficiently allege a Fourth Amendment violation, and (4) Drey is not entitled to qualified immunity at this stage. Each of these are addressed in turn.

### 1. Incorporation of the August 26, 2020 news conference

First, Drey argues that the R&R incorrectly refused to consider a video of a press conference that Acevedo gave after the incident in deciding Drey's Motion to Dismiss. ECF No. 33 at 2. When deciding a 12(b)(6) motion, the Court may consider materials that are incorporated into a plaintiff's complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "[F]or a document to be incorporated into the pleadings under this exception, it must (1) be attached to a defendant's motion to dismiss; (2) be referred to in the plaintiff's complaint; and (3) be central to the plaintiff's claims." *Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 323 (E.D. Tex. 2021) (quoting *Kaye v. Lone Star Fund V* (U.S.), L.P., 453 B.R. 645, 662 (N.D. Tex. 2011)).

As the R&R identifies, these requirements are not met. The Complaint makes only one vague reference to the conference. ECF No. 17 ¶ 20. It does not attach, hyperlink, or otherwise discuss the conference outside of this single sentence. When presented with similar facts, other courts have found extrinsic materials are not incorporated by reference into a complaint. *See, e.g.*, *Polnac*, 555 F. Supp. 3d at 325 (finding that a 911 call wasn't incorporated into a complaint because the plaintiff did not "pull direct quotes from the 911 call," "provide a hyperlink to the 911 call," or "attach the 911 call as an exhibit"). Similarly to *Polnac*, Plaintiffs' Complaint does not include quotes from the conference, a link to the conference, or a copy of the conference as an exhibit.

Additionally, although the conference is cited as evidence for Plaintiffs' claims, the conference is not "central" to them. "[D]ocuments are central to a plaintiff's claim when they are necessary to establish an element of the claim but are not central if the documents are merely evidence of an element." *Penthol LLC v. Vertex Energy Operating, LLC*, No. 4:21-CV-416, 2021 WL 3571243, at *4 (S.D. Tex. Aug. 12, 2021); *Lopez v. Don Herring Ltd.*, No. 3:16-CV-02663-B, 2018 WL 296063, at *4 (N.D. Tex. Jan. 4, 2018). While Plaintiffs cite the press conference as evidence that no gun was found in the hours after Kehyei's death, the press conference itself is not a "necessary element" or their claims.

Because the Complaint only vaguely references the news conferences and the issue of what occurred at the news conference is not central to the dispute, the video of the news conference is not incorporated into the Complaint. As a result, it would be improper for the Court to consider the video in deciding Drey's Motion. *See* FED. R. CIV. P. 12(b)(6).

## 2. Capacity

Next, Drey contests Judge Palermo's finding that one of the Plaintiffs, Maya Thorn, has capacity to bring this suit. ECF No. 33 at 15. Thorn is suing as next friend of S.T., Kehyei's only child, who Plaintiffs argue has capacity to bring this suit on behalf of Kehyei's estate. ECF No. 17 ¶ 5.

The law of the forum state controls the issue of whether one has capacity to sue as a decedent's representative. FED. R. CIV. P. 17(b)(3). In Texas, "[a]n estate only has the capacity to sue through either its legally appointed legal representative or an heir who can demonstrate that there is 'no administration pending and none [is] necessary.'" *Aguirre v. City of San Antonio*, 995 F.3d 395, 423 (5th Cir. 2021) (quoting *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 847 (Tex. 2005).

As the R&R identified, Plaintiffs have alleged facts sufficient to show that S.T. is Kehyei's heir and no administration of the estate is necessary. ECF No. 32 at 19-24. Plaintiffs' Complaint states that "[n]o administration of the Estate of Julius Paye Kehyei is pending, and none is necessary." ECF No. 17 ¶ 5. It goes on to assert that S.T. is the sole beneficiary of Kehyei's estate, that the estate had no debts at the time of Kehyei's death, and Kehyei died without a will. *Id.* The Complaint states that "Kehyei leaves behind his minor daughter and Mother," and mentions no other family members. ECF No. 17 ¶ 66.

7

Drey now argues for the first time that Plaintiffs must prove that S.T. is Kehyei's heir by establishing a presumption of paternity or proof of paternity under TEX. EST. CODE § 201.052(a) before bringing this action. Drey is incorrect.

Drey cites no authority indicating that plaintiffs bringing a survival claim under § 1983 must prove paternity pursuant to TEX. EST. CODE § 201.052(a) before bringing their claim. Similarly, this court has found no authority addressing capacity to bring § 1983 survival claims that have analyzed, or even mentioned, any requirement that the litigant-heir prove their familial connection to the decedent in the specific manner required by TEX. EST. CODE § 201.052(a) or other similar provisions before filing their lawsuit. On the contrary, cases addressing this issue have uniformly held that, so long as a plaintiff pleads facts showing they are an heir and that no administration is pending, they may proceed. *See, e.g.*, *Aguirre v. City of San Antonio*, 995 F.3d 395, 423 (5th Cir. 2021); *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 847 (Tex. 2005); *Adkison*, 2020 WL 137226, at *2–3 ("Because Plaintiffs allege that no administration is necessary or pending, [decedent's] heirs may bring survival claims."); *Roundtree v. City of San Antonio*, No. SA18CV01117JKPESC, 2022 WL 508343, at *5 (W.D. Tex. Feb. 17, 2022) ("In the operative complaint, Ms. Roundtree has pled that she is an heir and that no administration of her son's estate is pending and none is necessary.").

Further, the Texas Supreme Court has rejected attempts to import the Estate Code's, formerly the Probate Code's, paternity provision requirements into wrongful death actions. *See Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 222 (Tex. 1988) (holding that the Probate Code's paternity-determination provision did not need to be satisfied before bringing wrongful death action); *see also Garza v. Maverick Mkt., Inc.*, 768 S.W.2d 273, 275 (Tex. 1989) (refusing to import paternity provision in the Family Code to wrongful death action). Further, the Texas

8

Supreme Court has indicated that the same reasoning likely applies in the context of survival suits. *See Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 222 (Tex. 1988).

Drey cites two Texas Appellate Court cases in support of his position. The first, *Bell v. Hinkle*, involves an inheritance dispute, and says nothing about what is required to bring a survival action. 607 S.W.2d 936, 937 (Tex. App.—Houston [14th Dist.] 1980). The second, *City of Austin v. Membreno Lopez*, held that the plaintiff in a negligence survival suit has sufficiently shown paternity at trial. *City of Austin v. Membreno Lopez*, 632 S.W.3d 200, 225 (Tex. App. 2021). This case provides tenuous support for the idea that an heir bringing a survival suit may have to prove they are an heir under the provisions in the Texas Estate Code at trial, although this conclusion does not appear to have been endorsed by other courts and may be in conflict with the Texas Supreme Court's reasoning in *Brown*. Nonetheless, even on its own terms *Membreno Lopez* is no help to Drey. That is, there the court held that it is sufficient for paternity to be adjudicated at trial along with the survival claims, undermining Drey's position that Plaintiffs must prove paternity *before* even filing their claim.

As a result, the Court finds that Plaintiffs have adequately pled facts showing that Thorn has capacity to bring this action.

### 3. Excessive force claim

Next, Drey argues that the R&R erroneously found that Plaintiffs had adequately pled their § 1983 excessive force claim. The relevant question is whether "taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right" *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Byrd v. Cornelius*, 52 F.4th 265, 271 (5th Cir. 2022). The essential elements of a Fourth Amendment excessive force claim are: "(1)

9

injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009).

In this case, only the third factor of reasonableness is at issue. Analyzing whether force was reasonable is fact intensive and requires examining (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Byrd*, 52 F.4th at 270 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

As the R&R recognized, Plaintiffs adequately pled an excessive force claim. ECF No. 32 at 28-32. Based on the facts alleged, each of the three factors were weighed in favor of finding that Drey acted unreasonably. Kehyei was apprehended in response to a suspicious person call. ECF No. 17 ¶ 16. He was unarmed and did not threaten police or bystanders. *Id.* ¶ 18. Despite the heavy police presence, a gun was not recovered from the scene. *Id.* ¶ 20. Although he initially ran from police, he stopped in the church parking lot and subsequently spoke to officers "for some time." *Id.* ¶ 18. And, when Drey shot him, Kehyei was not fleeing or resisting arrest. *Id.* ¶ 18. Under the facts in Plaintiffs' Complaint, Drey's conduct was a clear violation of the Fourth Amendment. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."); *Cole v. Carson*, 935 F.3d 444, 453 (5th Cir. 2019), as revised (Aug. 21, 2019) (same);   *Bright v. City of Killee*n, No. 6:20-CV-431-ADA-JCM, 2021 WL 4431114, at *4 (W.D. Tex. May 11, 2021) (same).

Drey objects to this finding, arguing that the facts do not suggest that Kehyei was unarmed and non-threatening. ECF No. 33 at 6-7. In support of this conclusion, Drey points to a list of facts,

all of which are either not drawn from Plaintiffs' pleadings or require the Court to draw inferences in Drey's favor. *Id*. (listing facts). For example, Drey states that Kehyei "shot at individuals and police officers," which is not supported by the Complaint or any of the facts therein. *Id.* Elsewhere Drey argues that the number of police and the presence of SWAT officers at the scene indicates that Kehyei was dangerous and that the use of deadly force was reasonable. *Id.* at 6. Not only is the logic underlying this argument tenuous, but it requires drawing a number of inference in Drey's favor.

However, at this stage the Court must consider the facts as alleged in Plaintiffs' pleadings and draw all inferences in Plaintiffs' favor. FED. R. CIV. P. 12(b)(6). The Fifth Circuit has been clear that District Courts are not entitled to adopt a defendant-officer's factual account when it conflicts with the Plaintiffs at the summary judgment stage. *Crane v. City of Arlington*, 50 F.4th 453, 462 (5th Cir. 2022) (holding that the court could not accept defendant's version of events when there are competing factual accounts); *Cole*, 935 F.3d at 453 ("[T]he officers ask us to consider a different set of facts, but we cannot do so."). The same is certainly true at the motion-to-dismiss stage. *See Tuttle v. Sepolio*, 68 F.4th 969, 974 (5th Cir. 2023) ("The officers deny that they shot first, as is their right. But such a denial does not override our obligation to accept the well-pleaded facts."). The Court finds that Plaintiffs have adequately pled their excessive force claim.

### 4. Qualified Immunity

Drey next objects to the R&R's conclusion that he is not entitled to qualified immunity at this stage. After finding a violation of a constitutional right, the Court must next ask whether the right violated was "clearly established." *Byrd*, 52 F.4th at 271. While "[the Supreme Court] do[es]

not require a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Crane*, 50 F.4th at 466. "In order to conclude that the right which the official allegedly violated is 'clearly established,' the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 635 (1987).

Drey argues that the Court "cannot identify a case or body of relevant case law from the Supreme Court or Fifth Circuit holding an officer violated the constitution by using deadly force when an armed suspect who had already shot at bystanders and police officers threatened to continue shooting officers and raised his gun towards them to do so." ECF No. 33 at 15. The preliminary issue with this objection is it does not properly state the facts as alleged in the pleadings, which, again, the Court is required to take as true at this stage. *See Tuttle v. Sepolio*, 68 F.4th 969, 974 (5th Cir. 2023). The facts, as delineated in the Complaint, state that Kehyei was unarmed, he did not threaten officers or bystanders (much less shot at them), and did not brandish any gun. ECF No. 17. The question before the Court is whether the facts, as the Plaintiffs assert them to be, show the violation of a clearly established right. Drey's argument would require an inversion of this standard.

On the facts in the pleading, the R&R found, and the Court agrees, that Kehyei's right to be free from excessive force was clearly established. "It has long been clearly established that, absent any other justification for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others." *Crane*, 50 F.4th at 466 (quoting *Lytle v. Bexar County*, 560 F.3d 404, 417 (5th Cir. 2009)). *Crane* recognized that it is similarly unreasonable if the felon is fleeing on foot. *Id.* at 466. The Supreme Court has similarly held that "[w]here the suspect poses no immediate threat to the officer

and no threat to others, the harm resulting from failing to apprehend him does not justify the use

of deadly force to do so." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *see also id.* ("A police

officer may not seize an unarmed, nondangerous suspect by shooting him dead.").

     *Garner* established this right "at a high level of generality." *Brosseau v. Haugen*, 543 U.S.

194, 199 (2004). However, "in an obvious case, [*Garner*] can 'clearly establish' the answer, even

without a body of relevant case law." *Id.* at 199. Based on the facts as alleged in the pleadings, this

case is one such "obvious" instance where *Garner* was sufficient to put Drey on notice that the use

of deadly force on an unarmed, non-threatening individual was a constitutional violation.

     The Fifth Circuit has found "obvious" violations of *Garner* in similar cases where the facts

alleged indicate the victim was unarmed, did not flee or resist arrest, and did not pose a threat to

officers. In *Cole*, for example, two officers were called to apprehend a seventeen-year-old, Ryan,

who was reported walking around with a gun. *Cole*, 935 F.3d 444. The officers pursued Ryan and

eventually found him in a secluded area with his gun pressed against his head. *Id.* The officers then

shot him. *Id. at* 448-49. The Fifth Circuit noted that Ryan "never pointed a weapon at the Officers,"

"never made a threatening or provocative gesture towards [the] Officers," and "posed no threat to

the officers or others to support firing without warning." *Id.* at 449, 453. The Fifth Circuit

concluded that "[t]his case is obvious when we accept the facts as we must." *Id.* at 453.

     *Cole* is not an anomaly. Other cases have similarly found obvious violations of *Garner*

when police have shot non-threatening and/or unarmed individuals. In *Crane*, the Fifth Circuit

found an "obvious" violation when police shot an unarmed man in his car. *Crane v. City of*

*Arlington*, 50 F.4th 453, 467 (5th Cir. 2022) ("When we accept the facts as we must, this case is

an obvious one."). The Southern District has held similarly. *See Benavides v. Harris Cnty.*, No.

4:21-CV-1289, 2023 WL 4157160, at *6 (S.D. Tex. June 23, 2023) ("[I]n light of the fact that

Benavides (1) posed no threat, (2) was not resisting, (3) was not fleeing, (4) was unarmed, and (5) was shot 'almost instantaneously' after opening the front door, the Court finds that Benavides has satisfied the second prong of the qualified immunity analysis on obviousness grounds.").

Similarly to the plaintiffs in *Cole* and *Crane*, Plaintiffs in this case allege that Kehyei never pointed a weapon at officers and did not pose a threat to officers. ECF No. 17 ¶ 18. In fact, the case at hand provides an even more obvious violation than *Cole* and *Crane*. In *Cole*, the parties agreed that Ryan had a gun and that he was the suspect who police were searching for. 935 F.3d at 448-49. In contrast, Kehyei did not have a weapon and it is unclear whether he was the "suspicious person" about whom police were called. ECF No. 17 ¶ 16. And, unlike the decedent in *Crane*, the facts in Plaintiffs' pleadings indicate Kehyei was not evading arrest for prior offenses. Based on the facts in the pleading, this is exactly the sort of "obvious" case under which *Garner*, and other Fifth Circuit precedent, provides fair notice that deadly force is unconstitutional.

Even if this were not an "obvious" case, Fifth Circuit precedent as of August 2020, the date of the incident, had clearly established that using deadly force against an unarmed individual who does not pose a threat to officers or bystanders is a constitutional violation. *See Cole v. Carson*, 935 F.3d 444, 453 (5th Cir. 2019), as revised (Aug. 21, 2019); *Releford v. Rosemon*, 678 F. App'x 267, 268 (5th Cir. 2017). The Fifth Circuit has applied this rule in facts similar to those at hand to deny qualified immunity. For example, in *Releford v. Rosemon*, an officer apprehended Releford, who he suspected of breaking into a neighbor's home, and eventually shot and killed him. 678 F. App'x 267, 268 (5th Cir. 2017). The Fifth Circuit held that, based on the facts as presented by the plaintiff, the officer was not entitled to summary judgment on the qualified immunity issue. *Id. Releford* presents an eerie number of factual similarities to the case at hand. Both arose from police apprehending a suspect. In both cases, the suspect was "unarmed," "did not charge at [the officer],"

14

"did not provoke [the officer]," and "did not pose a threat to [the officer]." *Id.* at 268. And, in both cases, the officer "shot and killed [the suspect] for no reason." *Id. Releford* and other Fifth Circuit precedent clearly established that Drey's conduct was unconstitutional at the time of the incident.

Drey's objection points to the fact that Kehyei ran from police before arriving in the church parking lot. ECF No. 33 at 6. However, Fifth Circuit precedent had clearly established that the mere fact that an individual is fleeing a scene does not justify the use of deadly force. *Lytle v. Bexar County* clearly established that "it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others." 560 F.3d 404, 417 (5th Cir. 2009); *see also Edwards v. Oliver*, 31 F.4th 925, 930–31 (5th Cir. 2022) ("Our precedent in *Lytle v. Bexar County* holds that the use of deadly force against a fleeing suspect who poses insufficient harm to others violates clearly established law."). Further, Drey shot Kehyei after Kehyei had stopped running and had engaged with police "for some time." ECF No. 17 ¶ 18. Even if Kehyei's flight were sufficient justification for the use of deadly force, which it is not, it occurred long before he was shot. "For an officer's force to be reasonable, it must be commensurate with the suspect's level of contemporaneous, active resistance." *Joseph v. Bartlett*, 981 F.3d 319, 335 (5th Cir. 2020). In this case, Kehyei's running from police did not occur contemporaneously with Drey's use of deadly force.

It also bears noting that in similar cases where the pleadings allege that officers used deadly force without provocation, the Fifth Circuit and Texas district courts have found those allegations sufficient to overcome qualified immunity at the motion-to-dismiss stage. *See Tuttle v. Sepolio*, 68 F.4th 969, 974 (5th Cir. 2023) ("Plaintiffs' allegations state an excessive-force claim that overcomes qualified immunity. Accepting Plaintiffs' version of events as true, the officers fired upon Tuttle and Nicholas without provocation. Taken together, the facts alleged are sufficient at

the pleading stage."); *Bright v. City of Killeen*, No. 6:20-CV-431-ADA-JCM, 2021 WL 4431114, at *4 (W.D. Tex. May 11, 2021), report and recommendation adopted 2021 WL 4427486 (W.D. Tex. Sept. 27, 2021) ("Accepting the facts as pleaded in the complaint, Reed did not have a gun nor did he shoot at the officers. Under that set of facts, deadly force was clearly excessive and objectively unreasonable because there was no imminent threat to the officers. Therefore, Plaintiff adequately alleges that the use of force was clearly excessive to the need and objectively unreasonable." (internal citations omitted)).

Drey makes an additional argument that the precedent the R&R relies on is "dicta" because those cases involved "facts dissimilar from those at issue in this case." While Drey is correct that the Fifth Circuit has rejected the idea that dicta can make a right clearly established, see *Morrow v. Meachum*, 917 F.3d 870, 875-76 (5th Cir. 2019), whether a statement is dicta has nothing to do with how similar the facts of each case are. In this case, the precedent that the R&R and the Court rely on is far from dicta. Additionally, as described above, the facts in those cases are analogous to those in the present case. As a result, the Court finds that the right at issue in this case was clearly established such that Drey was on notice that deadly force would violate the Fourth Amendment.

### B. The City's Motion to Dismiss

#### 1. Ratification

Plaintiffs argue that the R&R erroneously concluded that they failed to state a claim against the City under a ratification theory of liability. They contend that (1) they should not be required to show "extreme factual circumstances" and (2) they have shown the City knowingly approved of Drey's conduct and the basis for it.

### 1. Extreme Factual Circumstances

Plaintiffs first object to the R&R's finding that ratification liability requires Plaintiffs to show there were "extreme factual situations" similar to those present in *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir.1985). ECF No. 32 at 47-49. Plaintiffs argue that a showing of "extreme factual circumstances" shouldn't be required as neither the Supreme Court nor any other Circuit besides the Fifth Circuit have required a such a showing. ECF No. 34 at 3-4. While this may be the case, the Court is bound by Fifth Circuit's precedent. To the extent that the Fifth Circuit does require such a showing, so must this Court. *See Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009) ("[O]ur precedent has limited the theory of ratification to 'extreme factual situations.'"); *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1985); *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009).

To be fair to Plaintiffs, "[n]ot all Fifth Circuit ratification cases address or appear to require proof of an extreme factual scenario." *Taylor v. Hartley*, 488 F. Supp. 3d 517, 540 (S.D. Tex. 2020). The court in *Taylor* identified a number of Fifth Circuit opinions involving ratification claims that did not address whether there was an "extreme factual scenario." *See Turner*, 915 F.2d at 136; *Beattie*, 254 F.3d at 603; *Milam*, 113 F. Appx. at 626; *Chavez v. Brownsville Independent School District*, 135 F. Appx. 664, 679 (5th Cir. 2005) (unpublished); *Covington v. City of Madisonville*, 812 F. App'x 219, 221 (5th Cir. 2020). In most, if not all, of these cases, the facts alleged did not rise to nearly the level of those in *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir.1985). Additionally, as the Court has previously stated, "[t]his Court does not think there is a principled basis for limiting the ratification theory to so-called 'extreme factual scenarios.'" *Hobart v. City of Stafford*, 916 F. Supp. 2d 783, 796 (S.D. Tex. 2013) (Ellison, J.).

Nonetheless, "this Court is bound by the Fifth Circuit, which has consistently held that the ratification theory applies only to 'extreme factual scenarios.'" *Hobart v. City of Stafford*, 916 F. Supp. 2d 783, 796 (S.D. Tex. 2013). This case is no different from others where the Court has held that it must apply this standard. *See Hobart v. City of Stafford*, 916 F. Supp. 2d 783, 796 (S.D. Tex. 2013) (Ellison, J.); *Heckford v. City of Pasadena*, No. 4:20-CV-4366, 2021 WL 2517405, at *5 (S.D. Tex. June 18, 2021) (Ellison, J.); *Harvey v. Montgomery Cnty.*, 881 F. Supp. 2d 785, 798 (S.D. Tex. 2012) (Ellison, J.).

The R&R found, and Plaintiffs do not contest, that the facts in this case do not present extreme factual circumstances analogous to those in *Granstaff*. ECF No. 32 at 47-49. As a result, the Court finds that Plaintiffs have failed to state a ratification claim.

## 2. Knowing Approval

Plaintiffs also contest the R&R's conclusion that Plaintiffs failed to show that Acevedo knew of Drey's decision and the basis for it and did not allege that Acevedo came to the defense of Drey's manifestly indefensible conduct. ECF No. 32 at 48-49. Plaintiffs argue that the City, through the actions of Acevedo, ratified Drey's conduct because Drey hasn't been terminated, disciplined, or required to attend additional training. ECF No. 17 ¶ 27, 32.

A plaintiff alleging municipal liability under a ratification theory must show that "a policymaker knowingly approve[d] a subordinate's actions and the improper basis for those actions." *Covington v. City of Madisonville*, 812 F. App'x 219, 228 (5th Cir. 2020). Absent such a showing, they may still successfully allege a ratification claim if they show that the underlying conduct is "manifestly indefensible." *Id.*

Plaintiffs make two arguments in their objection, neither of which has merit. First, they argue that the R&R only analyzed whether Drey's conduct was "manifestly indefensible" and ignored that Plaintiffs could succeed by showing that Acevedo "knowingly approved" of Drey's conduct. ECF No. 34 at 7. They also argue because "the City did not argue in its motion that there is 'no evidence' that Acevedo did 'knowingly approve' of Drey's conduct," the Court should assume that Acevedo knowingly approved of Drey's conduct. *Id.*

This argument is both factually incorrect and misunderstands Plaintiffs' burden. First, the R&R did consider whether Plaintiffs had adequately pled facts indicating that Acevedo knowingly approved of Drey's conduct. ECF No. 32 at 48 ("But Plaintiffs fail to identify facts showing the City approved the unconstitutional conduct."). Additionally, the City did make the argument in its Motion to Dismiss that Plaintiffs failed to show Acevedo knowingly approved Drey's actions. *See* ECF No. 20 at 29 ("At best, this is a grossly deficient ratification theory of *Monell* liability, without the requisite showing that 'authorized policymakers approve[d] a subordinate's decision and the [wrongful] basis for it,' in order for their ratification to be chargeable to the City."). Even if this were not the case, it would still be Plaintiffs' burden to allege facts that could plausibly be construed to show that Acevedo knowingly approved of Drey's actions and the basis for them.

Plaintiffs' ratification claim fails to meet this standard. "[A] municipality is not liable under the ratification theory where a Police Chief accepts his officers' version of events, so long as 'that version did not show that the deputies' actions were manifestly indefensible." *Hobart v. City of Stafford*, 916 F. Supp. 2d 783, 795 (S.D. Tex. 2013) (Ellison, J.) (quoting *Allen v. City of Galveston*, No. G–06–467, 2008 WL 905905, at *8 (S.D. Tex. March 31, 2008); *see also Covington v. City of Madisonville*, 812 F. App'x 219, 228 (5th Cir. 2020) ("[U]nless conduct is 'manifestly indefensible,' a policymaker's mistaken defense of a subordinate who is later found to

have broken the law is not ratification chargeable to the municipality."). Unfortunately for Plaintiffs, the knowing approval standard requires them to allege that Acevedo did more than take Drey at his word regarding his account of the incident.

### 2. Failure to Train

Plaintiffs next object that the R&R applies too high of a standard to their failure to train claim at the motion-to-dismiss stage. To maintain a failure to train claim, Plaintiffs must plausibly allege that: (1) the City's "training policy procedures were inadequate;" (2) the City's "inadequate training policy directly caused" the alleged constitutional violations, and (3) the City "was deliberately indifferent in adopting its training policy." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010).

### 1.  Training inadequacy

Plaintiffs have identified the alleged training failures with sufficient specificity to survive a motion to dismiss. Plaintiffs' Complaint identifies the following training failures: "(a) The inadequacy of HPD policies, training, supervision, or discipline relating to the use of deadly force; (b) The inadequacy of HPD's policies, training, supervision, or discipline relating to the use of non-lethal control devices and tactics; (c) The adoption of completely subjective continuum of force policies that can be expressly avoided, and which leaves the use of deadly force exclusively to the unchecked discretion of officers on the scene; (d) The adoption of a policy that allows officers to use the degree of force that the officer feels brings the situation quickly under control as per his or her individual judgment even if that method is deadly force; (e) Lack of training regarding effective communication with citizens while giving them commands and determining

20

their compliance; and (f) Using deadly force against Kehyei although he caused no immediate threat." ECF No. 17 at 24 ¶ 93. Plaintiffs elsewhere identify a failure to train officers in "proper deescalation procedures and techniques" and use of "less than lethal force (e.g., taser guns and canines)." *Id.* ¶ 29.

While some of these allegations are non-specific or do not actually identify training failures, Plaintiffs' Complaint still "singles out a number of ways in which the training program was defective." *Pinder*, 2017 WL 11612501, at *10. For example, Plaintiffs identify a lack of training in (1) proper deescalation procedures and techniques, (2) less than lethal force such as taser guns and canines, (3) effective communication with citizens while giving them commands and determining their compliance, and (4) the use of deadly force. ECF No. 17 at ¶¶ 29, 93.

The training deficiencies that Plaintiffs identify are analogous to others that courts have previously found sufficiently specific to provide the City with notice. *See, e.g.*, *Pinder v. Skero*, No. 4:16-CV-03479, 2017 WL 11612501, at *10 (S.D. Tex. Sept. 6, 2017) (finding allegations that the county failed to train officers "(1) in how to respond to a stopped citizen about the justification for the stop; (2) in the use of de-escalation techniques; (3) to understand the elements of resisting arrest so an unreasonable deployment of deadly force is not used against peaceable individuals; (4) in the reasonable uses of force; and (5) in the proper preparation, drafting, and/or submission of use-of-force reports" to be sufficient); *Heckford v. City of Pasadena*, No. 4:20-CV-4366, 2021 WL 2517405, at *4 (S.D. Tex. June 18, 2021) (Ellison, J.) (finding pleadings "that Chief Bruegger provided 'no training whatsoever' on several aspects of excessive force standards and otherwise 'did not comport with the standard in the industry' on such trainings" sufficiently specific to allow plaintiff's failure to train claim to survive a motion to dismiss); *Ettinoffe v. Sheikh*, No. 4:21-CV-02646, 2022 WL 5200084, at *7 (S.D. Tex. Oct. 4, 2022) (Ellison, J.) (denying

motion to dismiss claim alleging failure to train officers in "(a) proper escalation of force; (b) the use of excessive force; (c) the illegality of excessive force; (d) the constitutional limits of the use of force; (e) the necessary and proper limits of force in a tense situation; (f) how to negotiate with an unwell detainee; (g) use of lethal force; (h) how to avoid using lethal force; (i) appropriate de-escalation; (j) avoiding needless incapacitation; (k) avoiding needless use of a firearm; (l) avoiding cruel and unusual punishment; (m) avoiding putting knees on necks; and (n) the use of unnecessary excessive force while detainees are handcuffed and hogtied"); *Sanchez v. Gomez*, 283 F. Supp. 3d 524, 545 (W.D. Tex. 2017) (allegations "that EPPD failed to train its officers on how to (1) make first contact with a mentally unstable individual; (2) de-escalate mental health crises rather than escalate the confrontation; (3) take steps to minimize the use of deadly or intermediate force when dealing with such a person; and (4) respond to crisis intervention calls or use verbal de-escalation tactics" were sufficiently specific to survive a motion to dismiss); *Schaefer v. Whitted*, 121 F. Supp. 3d 701, 719 (W.D. Tex. 2015) (finding allegations alleging failure to train in "(a) the use of deadly force; (b) interactions with individuals legally entitled to possess and carry weapons; and (c) citizens' Second Amendment right to possess weapons for self-defense in their homes" were sufficient to survive motion to dismiss). This case also involves markedly more detailed factual allegations than other instances in which the Fifth Circuit has found failure to train claims insufficient at the motion-to-dismiss stage. *See, e.g.*, *Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015) ("Speck instead makes only the conclusory allegation that it is 'apparent from the facts of this case' that the excessive force training, to use one of his claims as an example, was insufficient. He provides no factual allegations about the content of the excessive force training.").

As a result, the Court finds that Plaintiffs "refer to the specific topic of the challenged policy or training inadequacy" sufficiently to "provide the City with adequate notice of the claims against it." *Schaefer v. Whitted*, 121 F. Supp. 3d 701, 719–20 (W.D. Tex. 2015).

### 2.  Causation

Plaintiffs must also prove that the failure to train was the "'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). Plaintiffs repeatedly assert how the City's failure to train led to Kehyei's death. ECF No. 17 at ¶ 103 ("Defendant Drey's lack of training and failure to adopt an adequate policy providing for less-lethal means led to the use of excessive and deadly force and, ultimately, his killing of Kehyei."); *see also* ECF No. 17 ¶ 35. It is readily apparent how a failure to provide sufficient training in "non-lethal control devices and tactics" and "effective communication with citizens while giving them commands and determining their compliance" would lead to the circumstances described in the Complaint. ECF No. 17 ¶ 93. Therefore, the Court finds that Plaintiffs have adequately pled a causal connection between the alleged training failures and Kehyei's death.

### 3.  Deliberate indifference

Plaintiffs must also allege a pattern of deliberate indifference related to the alleged training failures. There are two ways for a plaintiff to show deliberate indifference. Generally, a plaintiff must show demonstrate that city employees "so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407 (1997) (quoting *Canton*, 489 U.S. at 390 n.10). Alternatively, there is a narrow

"single incident exception." *Id.* at 461. "To rely on this exception, a plaintiff must prove that the 'highly predictable' consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the 'moving force' behind the constitutional violation." *Roberts v. City of Shreveport*, 439 F.3d 287, 295 (5th Cir. 2005) (quoting *Bryan County*, 520 U.S. at 461).

Plaintiffs' Complaint chronicles 18 incidents of alleged excessive force from 1998 to 2010 with varying levels of similarity to the case at hand. ECF No. 17 at ¶ 40-60. Plaintiffs also incorporate into their Complaint a news article listing a series of police-involved shootings that occurred in early 2022, ECF No. 17 ¶ 61 n.3, and another article describing six incidents of police-involved shootings that occurred around 2020, *id.* ¶ 37. Plaintiffs further describe a 2018 shooting involving Drey where he was also the only officer to discharge his gun and where his account of the event was "almost identical to the shooting death of Julius Kehyei." ECF No. 17 ¶ 60. In addition, Plaintiffs state that since 2004, about 450 HPD officers had been involved in injuring or killing civilians, and 25% of these incidents involved civilians with no weapons. ECF No. 17 ¶ 38. Only one of those officers was ever subject to discipline. *Id.* Finally, Plaintiffs allude to the fact that there have been repeated excessive force cases brought against the City over the past 20 years. *Id.* ¶ 61.

The Court finds these facts sufficient to satisfy the deliberate indifference requirement at this stage. To be sure, these allegations leave something to be desired. The majority of incidents described occurred over a decade ago, and the more recent incidents are ambiguous as to whether they involved misconduct. However, "even general facts which point to prior violations" allow plaintiffs to "survive the motion to dismiss phase." *Hobart v. City of Stafford*, No. 4:09-CV-3332, 2010 WL 3894112, at *5 (S.D. Tex. Sept. 29, 2010).

Further, similar evidence of deliberate indifference has been found to sufficient to withstand a motion to dismiss. For example, allegations that an officer had used excessive force in prior incidents have been found to show deliberate indifference. *See Pinder v. Skero*, No. 4:16-CV-03479, 2017 WL 11612501, at *10 (S.D. Tex. Sept. 6, 2017) ("Pinder's Amended Complaint states that Skero was involved in two prior arrest incidents in which he '[d]isplayed an unreasonable show of force' and 'grabbed, pushed, and drug' individuals who posed no threat to him. Pinder further alleges that Skero '[m]isrepresented facts in offense reports and subsequent testimony regarding the[se] incidents.'") (cleaned up)). In other cases, the fact that the City had been a defendant in prior similar cases has been sufficient. *See Barr v. City of San Antonio*, No. CIVASA-06-CA-0261-XR, 2006 WL 2322861, at *4 (W.D. Tex. July 25, 2006) (denying motion to dismiss where plaintiff alleged, without further detail or citation, that city had been named a defendant in four similar lawsuits). Others have found that identifying even a few similar incidents is enough to show deliberate indifference. *Heckford v. City of Pasadena*, No. 4:20-CV-4366, 2021 WL 2517405, at *4 (S.D. Tex. June 18, 2021) (finding deliberate indifference standard was met at the motion-to-dismiss stage where "the Complaint recites six specific incidents of excessive force by the Pasadena Police Department in the years prior to the incident here, four of which involve unnecessary beatings in the course of an arrest."). And, in others, providing statistics about prior police-involved shootings has been sufficient to show deliberate indifference. *Flanagan v. City of Dallas*, 48 F. Supp. 3d 941, 955 (N.D. Tex. 2014) (holding that statistics showing "the shooting of 12 other unarmed individuals by DPD members in 2013," "the deaths of over 60 unarmed African–American men at the hands of DPD officers since 2001," and "the 94 open internal affairs investigations relating to officer-involved shootings" was sufficient to show deliberate indifference at motion-to-dismiss stage).

In this case, Plaintiffs provide (1) facts relating to past excessive force incidents, (2) statistics about HPD's police-involved shootings, (3) a description of a prior similar police shooting involving Drey, and (4) indication that HPD has been a defendant in similar lawsuits. In combination, this showing is certainly sufficient to allege deliberate indifference. Although it is possible that these allegations, without more, will be inadequate at later stages of litigation, the Court finds them sufficient to survive a motion to dismiss. *See Pinder v. Skero*, No. 4:16-CV-03479, 2017 WL 11612501, at *11 (S.D. Tex. Sept. 6, 2017) ("While the Court is skeptical that two incidents will suffice to show knowledge of the need for additional training at the summary-judgment stage, . . . the Court finds that Pinder's allegations are sufficient to survive Defendants' Motion to Dismiss and entitle him to discovery.").

### 3. Use of Force Policy

Next Plaintiffs object to Judge Palermo's dismissal of their claim that the City's written policy on use of force is facially unconstitutional. Plaintiffs allege two deficiencies with the City's written policy: (1) "HPD policies on the use of force instruct officers that the degree of nondeadly force is objectively reasonable even when based on the officers' subjective evaluation" and (2) HPD policies state "that officers may even use deadly force when no immediate threat of harm actually exists." ECF No. 17 ¶ 80. Plaintiffs allege that these policies are facially unconstitutional under the Supreme Court's interpretation of the Fourth Amendment. *Id.*[1]

---

[1] Plaintiffs also argue in their objection that the City instructs officers to presume that a suspect is armed and plans to use a weapon in "virtually every situation," in violation of the Fourth Amendment. ECF No. 23. However, as the City identifies in its Response to Plaintiffs' objections, because this allegation is absent from the Complaint, it is not properly before the Court. ECF No. 35 at 10.

"To state a claim under *Monell* and its progeny," Plaintiffs must "allege (1) that 'an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality'; (2) that the allegedly unconstitutional action constitutes a 'custom or policy'; and (3) that there was 'a violation of constitutional rights whose moving force is the policy or custom.'" *Brown v. Tarrant County*, 985 F.3d 489, 497 (5th Cir. 2021) (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166–69 (5th Cir. 2010)); *Hicks-Fields v. Harris County*, 860 F.3d 803, 808 (5th Cir. 2017).

### 1. Policymaker

Here, there is no dispute that Chief Acevedo, Mayor Sylvester Turner, and the Houston City Counsel were the final policymakers for HPD. ECF No. 32 at 39; ECF No. 17 ¶ 2. Thus, this prong is met.

### 2. Use of force policy

Plaintiffs have alleged sufficient information about the use of force policy. Although the R&R is correct that "Plaintiffs fail to identify any specific language in the allegedly unconstitutional HPD policy," ECF No. 32 at 44, such a requirement asks too much of Plaintiffs at this stage. As the Court has previously stated:

> In the context of municipal liability, as opposed to individual officer liability, it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery. Accordingly, only minimal factual allegations should be required at the motion to dismiss stage. Moreover, those allegations need not specifically state what the policy is, as the plaintiff will generally not have access to it, but may be more general.

27

*Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 843 (S.D. Tex. 2011) (Ellison, J.). The Court has never recognized a requirement that Plaintiffs identify "specific language" from a given policy in order to meet pleading requirements. Rather, a complaint may provide the defendant with sufficient notice if its allegations include, for example, "the specific topic of the challenged policy or training inadequacy." *Thomas*, 800 F. Supp. 3d at 843; *Flanagan v. City of Dallas*, 48 F. Supp. 3d 941, 947 (N.D. Tex. 2014) (same).

Here, the Court finds that Plaintiffs have met this standard by specifically describing the alleged constitutional violations in the City's written policies. Plaintiffs' complaint is more detailed than other cases where the court found dismissal was appropriate. *See, e.g.*, *Garcia v. Harris Cnty.*, No. CV H-22-198, 2022 WL 2230469, at *2 (S.D. Tex. June 2, 2022), report and recommendation adopted, No. CV H-22-198, 2022 WL 2222972 (S.D. Tex. June 21, 2022) (dismissing claim where complaint simply asserted that "Harris County promoted, adopted, and promulgated a policy or custom of allowing its arresting deputies to utilize excessive force when arresting citizens and not interfering to prevent others from engaging in the use of excessive force").

### 3. Causation

Plaintiffs also appear to satisfy the causation requirement, which mandates that they "must show either that 'the policy itself was unconstitutional' or that '[the policy] was adopted with deliberate indifference to the known or obvious fact that a specific constitutional violation would follow.'" *Edwards v. City of Balch Springs*, 70 F.4th 302, 307-08 (5th Cir. 2023). "An official, written policy is 'itself' unconstitutional only if it affirmatively allows or compels unconstitutional conduct. But where such an official, written policy merely commits some decisions to an

individual officer's on-the-scene discretion, or gives some detailed instructions while omitting others, then that policy satisfies *Monell*'s moving-force element only if those features stem from the policymaker's deliberate indifference." *Edwards*, 70 F.4th at 309-10; *see also Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003). The policy Plaintiffs address appears to be in the former category, as they argue that "[t]he City's *written* policies on the use of force are facially unconstitutional." ECF No. 17 at 21 (emphasis added).

Plaintiffs plausibly plead that the City's use-of-force policy was the moving force behind Kehyei's death. They explicitly allege that Drey acted on the City's allegedly unconstitutional use-of-force polices when he used deadly force against Kehyei, which eventually led to Kehyei's death. ECF No. 17 at ¶ 84. Additionally, the topic of the alleged policy is directly related to the circumstances leading to Drey's death. As a result, Plaintiffs seem to have met the standard for pleading a claim against the City for its use-of-force policy.

## IV.     CONCLUSION

For the foregoing reasons, Drey's Motion to Dismiss, ECF No. 19, is **DENIED**. The City's Motion is **GRANTED** with respect to Plaintiffs' failure to supervise and ratification claims against the City. The City's Motion to Dismiss, ECF No. 20, is **DENIED** with respect to Plaintiffs' excessive force claims against Drey and use-of-force policy and failure to train claims against the City. Plaintiffs' request for leave to amend, ECF No. 22, is **DENIED**. Defendants' prior Motions to Dismiss Plaintiffs' previous Complaint, ECF Nos. 9, 10, are both **DENIED** as **MOOT**.

**IT IS SO ORDERED**.

29

Signed at Houston, Texas on September 29, 2023.

Keith P. Ellison
United States District Judge