IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT
OF TEXAS HOUSTON DIVISION

| | | |
|---|---|---|
| DOLORES SAMUEL, individually and on behalf of the estate of JULIUS PAYE KEHYEI, DECEDENT, KYLE SAMUEL and MAYA THORN as NEXT FRIEND OF MINOR, S.T., <br>　　*Plaintiffs*, <br><br>V. <br><br>CITY OF HOUSTON, TEXAS, K. DREY, *Individually*, and JOHN DOE HPD OFFICERS 1-10, <br>　　*Defendants*. | § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:22-cv-2900 |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now Defendants City of Houston and Officer Kyle Drey, and file this Motion for Summary Judgment pursuant to Rule 56, of the Federal Rules of Civil Procedure, and respectfully shows the Court as follows:

TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... ii

    **NATURE AND STAGE OF PROCEEDINGS** ........................................................... 1

    **ISSUES PRESENTED AND STATEMENT OF FACTS** ........................................ 2

        **Statement of Issues** ............................................................................................. 2

        **Statement of Facts** .............................................................................................. 2

    **SUMMARY OF THE ARGUMENT** ......................................................................... 5

        **Standard of Review** ............................................................................................. 6

        **Qualified Immunity Standard** .......................................................................... 7

        **Officer Drey's Actions Were Objectively Reasonable Under Fourth Amendment Jurisprudence** ...................................................................................................... 8

        **Officer Drey is Entitled to Qualified Immunity.** ............................................. 11

        **Plaintiffs Have No Admissible Evidence to Oppose Summary Judgment.** .... 12

        **Conclusion** ......................................................................................................... 12

    **VERIFICATION** ......................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. al-Kidd*, 563 U.S. 741 (2011) ................................................................................ 7, 12
*Baker v. Coburn*, 68 F.4th 240 (5th Cir. 2023) ............................................................................. 6
*Ballard v. Burton*, 444 F.3d 391 (5th Cir. 2006) .......................................................................... 9
*Brown v. Callahan*, 623 F.3d 249 (5th Cir. 2010) ........................................................................ 6
*Carnaby v. City of Houston*, 636 F.3d 183 (5th Cir. 2011) .......................................................... 6
*Celotex Corp. v. Catreet*, 477 U.S. 317, 322 (1986) .................................................................... 6
*District of Columbia v. Wesby*, 583 U.S. 48 (2018) .................................................................... 7
*Garcia v. Blevins*, 957 F.3d 596 (5th Cir. 2020) .......................................................................... 9
*Garza v. Briones*, 943 F.3d 740  (5th Cir. 2019) ......................................................................... 9
*Graham v. Conner* 490 U.S. at 396 (1989) .............................................................................. 8, 9
*Kisela v. Hughes*, 138 S. Ct. 1148 (2018) .................................................................................. 12
*Manis v. Lawson*, 585 F.3d 839 (5th Cir. 2009) .......................................................................... 9
*McVae v. Perez*, 120 F.4th 487 (5th Cir. 2024) ........................................................................... 9
*Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011) ..................................................................... 8
*Morrow v. Meachum*, 917 F.3d 870 (5th Cir. 2019) .............................................................. 7, 12
*Mullenix v. Luna*, 136 S. Ct. 305 (2015) ................................................................................. 7, 8
*Pena v. City of Rio Grande City*, 879 F.3d 613 (5th Cir. 2018) .................................................. 8
*Ratliff v. Aransas County*, 948 F.3d 281 (5th Cir. 2020). ............................................................ 6
*Rich v. Palko*, 920 F.3d 288 (5th Cir. 2019) ................................................................................ 7
*Romero v. City of Grapevine*, 888 F.3d 170 (5th Cir. 2018). ...................................................... 8
*Roque v Harvel*, 993 F.3d 325  (5th Cir. 2021) ........................................................................... 9
*Ryburn v. Huff*, 565 U.S. 469 (2012) ........................................................................................... 9
*Salazar-Limon v. City of Houston*, 826 F.3d 272 (5th Cir. 2016) .............................................. 10
*Scott v. Harris*, 550 U.S. 372, 381, 127 S.Ct. 1769, 167 L.Ed.2d (2007) ................................... 7
*Tarver v. City of Edna*, 410 F.3d 745 (5th Cir. 2005) .................................................................. 8
*Tennessee v. Garner*, 471 U.S. 1 (1985) ..................................................................................... 9
*Valderas v. City of Lubbock*, 937 F.3d 384 (5th Cir. 2019) ......................................................... 9
*Vincent v. City of Sulphur*, 805 F.3d 543 (5th Cir. 2015). ........................................................... 7
*White v. Pauly*, 580 U.S. 73 (2017) ............................................................................................. 9

**Statutes**

Federal Rules of Civil Procedure, Rule 56 ................................................................................ i, 6

## NATURE AND STAGE OF PROCEEDINGS

Plaintiffs filed suit against Officer Kyle Drey and the City of Houston, alleging excessive force under 42 U.S.C. § 1983 against Officer Drey and municipal liability against the City under § 1983. On September 29, 2023, the Court issued a memorandum and order denying Drey's motion to dismiss and granting the City's motion to dismiss with respect to Plaintiffs' failure to supervise and ratification claims. The Court denied the City's motion to dismiss with respect to Plaintiffs' excessive force claims against Drey, as well as the use-of-force policy and failure to train claims against the City (Doc. 39).

On June 17, 2024, the Court held a status conference where Plaintiffs anticipated the need to move the expert deadline (Doc. 58). On October 31, 2024, the Court held a status conference and entered a minute entry order where Plaintiffs requested DNA evidence related to the firearm. The Court ordered Defendants' counsel to produce the specific documents they contend show the decedent's DNA on the firearm and required Plaintiffs to file a status report detailing their review and whether they intended to proceed after evaluation of the DNA evidence (Doc. #63). On December 11, 2024, the Court held another status conference and entered a minute entry stating that Plaintiffs were now requesting a crime scene diagram showing the evidence marker for the gun, in addition to the diagrams already produced (Doc. 65). The Court ordered Plaintiffs to file, by December 31, 2024, a status report indicating whether production of additional diagrams occurred, evaluating the merits of their case, and stating whether Plaintiffs intended to proceed with the lawsuit. On December 31, 2024, Plaintiffs provided a status report claiming there remains a conflict as to whether a gun was actually found on or near Kehyei, and affirming that Plaintiffs intend to proceed with this lawsuit. Trial is currently set for August 11, 2025. Defendants now move for summary judgment pursuant to Rule 56, Fed. R. Civ. P.

## ISSUES PRESENTED AND STATEMENT OF FACTS

**Statement of Issues**

(a) Whether Officer Kyle Drey is entitled to qualified immunity from Plaintiffs' §1983 claim alleging excessive force in violation of the Fourth Amendment.

(b) Whether any genuine issue of material fact exists regarding Plaintiffs' allegations of excessive force under §1983.

(c) Whether the City of Houston is entitled to summary judgment on Plaintiffs' §1983 claims.

**Statement of Facts**

1. On August 26, 2020, at approximately 3:28 a.m., HPD received reports of a suspicious person with a weapon call, as well as a related discharging firearms call reported by a resident on Hyde Park Blvd (Exhibit C at BS#339). As Officer Rincones went to the scene, he was approached by the driver of a black Chevy Tahoe who stated a male suspect (later identified as Kehyei) fired shots at his vehicle. *Id.* The suspect was described as wearing a dark shirt, plaid white shorts, and carrying a backpack. (Exhibit A at BS#119). Witnesses in the Tahoe reported that Kehyei approached their vehicle, pointed a silver pistol at them and fired multiple shots before fleeing the scene on foot. (Exhibit A at BS#108, 137, 139). Officer Holder, who was in search of Kehyei, located him on foot with a chrome pistol in his hand. (Exhibit D at BS#1491). Officer Holder gave Kehyei verbal commands to drop the pistol from his hand, however Kehyei failed to comply and continued to flee. *Id.*

2. Responding HPD officers, including Officers Jonathan Garza and Cody Ballard, arrived and observed Kehyei matching the description running on foot and pursued him in their vehicle. (Exhibit A at BS#152). As Kehyei approached the intersection of Hyde Park Blvd. and Van Buren, Kehyei turned, lifted the silver pistol at Officers Garza and Ballard, and fired three to four rounds towards the officers as they were inside their marked police unit. (Exhibit A at BS#153; Exhibit D

at 1491; Exhibit F, BS#1475. Ballard BWC). The bullets fired by Kehyei struck the police vehicle. *Id.*

3. Officer Holder located Kehyei as Officer Holder was running north on 2500 Van Buren (Exhibit A at BS#154). Kehyei was running directly towards Officer Holder and still holding the silver firearm in his hands. *Id.* Officers continued to pursue Kehyei on foot as he fled behind Kindred Church at 1327 Hyde Park Boulevard, jumping fences and barricading himself in an alley (Exhibit B at BS#335). Kehyei was observed armed with the pistol throughout the pursuit. *Id.* Officer Holder gave Kehyei's location over the air and maintained his position until back up arrived. Kehyei moved to sitting on top of a fence. *Id.* Kehyei was still pointing his revolver at officers while atop the fence. (Exhibit A at BS#154).

4. Officers established a perimeter and attempted verbal negotiations urging Kehyei to surrender (Exhibit D at BS#1491; Exhibit G at #1476). Kehyei, perched on a fence, refused and continued to hold the pistol, demanding water and threatening to shoot (Exhibit D at BS#1492). Multiple officers repeatedly commanded Kehyei to drop his weapon over a loudspeaker during the standoff, as captured in body-worn camera. (Exhibit F, BS#1475, Ex G , BS#1476, Exhibit A at BS #55; Exhibit B at BS#267).

5. Special Weapons and Tactics ("SWAT") Officers arrived on scene and established a perimeter aside the patrol officers (Exhibit D at BS#1492). Officer Drey, a SWAT marksman, assumed a position on the second floor of a townhome that was under construction and observed Kehyei on the fence (Exhibit B at BS#267). Officer Drey saw Kehyei with the chrome-colored handgun and saw Kehyei raise and point the pistol directly at officers. (Exhibit B at BS#267, 342). Officer Steven Hamala, another SWAT Marksmen, assumed a position on the third floor of a condo directly across the street from where Kehyei was (Exhibit B at BS#322). Officer Hamala

3

was able to view Kehyei holding a silver-colored revolver in his hand. *Id.* Officer Hamala was also able to view Kehyei raise his weapon multiple times. (*Id.* at BS#323).While officers were communicating with Kehyei, Officer Drey saw Kehyei raise the firearm again in the direction of the Officers, and Kehyei requesting for a bottle of water within "one minute" or he was going to start shooting. (Exhibit B at BS#343). Shortly after, Kehyei repeated that he was serious about his previous threat. *Id.* Officer Drey then observed Kehyei raise his gun up using a two-handed grip and extended his arms into a shooting position and was lowering his head to sight the weapon. *Id.* Knowing that Kehyei had previously fired at officers, Officer Drey believed Kehyei was serious about his stated intent to shoot at officers, and feared for the lives and safety of the officers. *Id.* Perceiving an imminent threat, Officer Drey fired a single shot from his rifle, striking Kehyei. *Id.*

6.  A Smith & Wesson .38 Special revolver was recovered one foot away from Kehyei's body, along with spent .38 SPL cartridge cases matching those fired earlier (Exhibit A BS#51, 114, 125, Ex. H, BS#1479; Exhibit C at BS#257-258). DNA testing confirmed Kehyei's DNA on the revolver, with the profile from the contact DNA swab (EM3) being approximately 16.7 octillion times more likely to originate from Kehyei than an unrelated individual (Exhibit A at BS#114; Exhibit I at BS #2805).

7.  No evidence supports Plaintiffs' claim that Kehyei was unarmed; multiple witnesses and officers consistently reported him armed and firing, corroborated by forensics, statements, and body worn cameras.

8.  On June 5, 2024, Plaintiffs served initial disclosures under FRCP 26(a)(1), listing categories of damages (e.g., pain and suffering, lost earnings, funeral expenses) but providing no specific computations, dollar amounts, formulas, or breakdowns. They stated they "will retain an economic damages expert who will calculate damages" and reserved the right to supplement, but

4

failed to do so. (Exhibit J). No supporting materials for damages were referenced or produced.

9. Discovery closed without supplementation. Plaintiffs' failures violate FRCP 26(a)(1)(A)(iii) (requiring "computation of each category of damages"). Plaintiffs' disclosure deficiencies mean any opposition evidence is excludable under FRCP 37(c)(1), leaving no admissible evidence to create a dispute.

## SUMMARY OF THE ARGUMENT

10. Officer Kyle Drey's actions during the apprehension of Julius Paye Kehyei were objectively reasonable under the totality of the circumstances and consistent with established Fourth Amendment jurisprudence. Kehyei, who fired at civilians and officers before barricading himself while armed, posed a significant and immediate threat to the safety of the officers and the public. His evasive and threatening behavior, including pointing a firearm at officers multiple times, necessitated a split-second decision by Officer Drey. The body-worn camera footage, forensic evidence, and witness statements corroborate the immediacy and severity of the threat perceived by Officer Drey, further supporting the reasonableness of his actions.

11. Officer Drey's use of force was justified under the principles established in *Graham v. Connor*, which require an evaluation of the severity of the crime, the threat posed by the suspect, and whether the suspect was actively resisting or evading arrest. Kehyei's violent actions, his active resistance, and his pointing of a firearm underscore the significant threat he posed.

12. Furthermore, Officer Drey is entitled to qualified immunity as his conduct did not violate any clearly established constitutional right. At the time of the incident, no precedent would have placed a reasonable officer on notice that the use of force in these circumstances was unlawful. Qualified immunity protects officers who must make rapid decisions in tense and uncertain situations, and this case exemplifies such a scenario. The material facts demonstrate that Officer Drey's actions were reasonable and necessary to protect his fellow officers, and the public at large.

13. As to the City of Houston, Plaintiffs cannot establish Monell liability because there is no evidence of a policy, custom, or failure to train that was the moving force behind any constitutional violation, nor deliberate indifference by policymakers. Additionally, absent an underlying consitutional violation, there can be no Monell liability.

14. In light of the absence of any genuine dispute of material fact and the clear applicability of qualified immunity, Officer Drey and the City are entitled to judgment as a matter of law.

## V. ARGUMENT AND AUTHORITIES

**Standard of Review**

15. Summary judgment is proper under Rule 56, Federal Rules of Civil Procedure, if the movant establishes that there is no genuine issue of material fact and the law entitles the movant to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catreet*, 477 U.S. 317, 322 (1986). However, a defendant's "good-faith assertion" of qualified immunity in a motion for summary judgment shifts this burden. *Ratliff v. Aransas County*, 948 F.3d 281, 287 (5th Cir. 2020). To survive summary judgment, the plaintiff must then present evidence demonstrating that the defense does not apply. *Id.* "Once an official pleads the [qualified immunity] defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Baker v. Coburn*, 68 F.4th 240, 244 (5th Cir. 2023) (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)).

16. Summary judgment evidence is reviewed in the light most favorable to the nonmoving party. *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011). However, when video footage captures the incident at issue, the Court relies on the facts depicted in the footage *Id.* (citing *Scott v. Harris*, 550 U.S. 372, 381, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)).

6

**Qualified Immunity Standard**

17. Qualified immunity is a robust defense which "protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citation omitted). Qualified immunity represents the norm, and it should be denied only in rare circumstances. *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019); *see also Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019) (the Supreme Court holds that courts "must think twice before denying qualified immunity"). Governmental officials are protected from suit and liability by qualified immunity unless their alleged conduct: (1) violated a constitutional or statutory right; and (2) the illegality of the alleged conduct was clearly established at the time. *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018). "Clearly established" means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful. *Id.* at 63. In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *Id.; Ashcroft v. al-Kidd*, 563 U.S. 741, 735 (2011).

18. This analysis depends upon whether, in light of the specific context of the case, not as a broad proposition, the "violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (emphasis in original). A plaintiff must identify "adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). "Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case." *Id.*

19. "When considering a defendant's entitlement to qualified immunity, [a court] must ask whether the law so clearly and unambiguously prohibited his conduct that '*every* reasonable official would understand that what he is doing violates [the law].'" *Morgan v. Swanson*, 659 F.3d

359, 371 (5th Cir. 2011). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005). The court "must be able to point to controlling authority—or a 'robust consensus of persuasive authority'—that defines the contours of the right in question with a high degree of particularity." *Morgan*, 659 F.3d at 371–72 (citation omitted). A case directly on point is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

**Officer Drey's Actions Were Objectively Reasonable Under Fourth Amendment Jurisprudence**

20. To establish a Fourth Amendment excessive-force claim, a plaintiff must show that he suffered "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018). "The second and third elements collapse into a single objective reasonableness inquiry," guided by the three *Graham* factors: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018); *Graham*, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Ballard v. Burton*, 444 F.3d 391, 402 (5th Cir. 2006) (citing *Graham*, 490 U.S. at 396). The Court 'must take heed to not define the relevant moment too narrowly but rather 'consider all of the circumstances leading up to that moment, because they inform the reasonableness of [the officer's] decision making.'" *McVae v. Perez*, 120 F.4th 487, 492-3 (5th Cir. 2024) (quoting *Mendez*, 823 F.3d at 333).

21. Deadly force is clearly excessive and objectively unreasonable unless "the officer has

8

probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Romero v. City of Grapevine, 888 F.3d 170, 176 (5th Cir. 2018).* (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). Probable cause exists when, for example, the "officer reasonably believes that a suspect was attempting to use or reach for a weapon." *Valderas v. City of Lubbock*, 937 F.3d 384, 390 (5th Cir. 2019) (per curiam) (citing *Manis v. Lawson*, 585 F.3d 839, 844–45 (5th Cir. 2009). "We 'consider [ ] only the facts that were knowable to the defendant officer [ ]'" when the officer used force. *Garza v. Briones*, 943 F.3d 740, 745 (5th Cir. 2019) (quoting *White v. Pauly*, 580 U.S. 73, 77 (2017) (per curiam)). And we ask, "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Roque v Harvel*, 993 F.3d 325, 333 (5th Cir. 2021). "[W]e are careful to avoid 'second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation.'" *Garza*, 943 F.3d at 745 (quoting *Ryburn v. Huff*, 565 U.S. 469, 477 (2012) (per curiam)). Additionally, when it comes to armed individuals, "we have never required officers to wait until a defendant turns towards them, with weapon in hand, before applying deadly force to ensure their safety." *Garcia v. Blevins*, 957 F.3d 596 (5th Cir. 2020) (quoting *Salazar-Limon v. City of Houston*, 826 F.3d 272 (5th Cir. 2016)).

22.  In the case at bar, Officer Drey objectively did not violate the Fourth Amendment. Officer Drey's perception that Kehyei posed an imminent threat was informed by the totality of the circumstances which established the imminent threat of Kehyei.

**The Severity and Violent Nature of Kehyei's Crimes.**

23.  Kehyei's actions, including firing his gun at civilians and officers constitute serious violent felonies. These offenses underscore the serious and violent nature of Kehyei's criminal conduct, as well as the significant threat he posed to public safety and law enforcement.

9

**The Imminent Threat of Kehyei**

24.     Kehyei posed a significant and immediate threat, amplified by the violent nature of the crimes. The threat escalated further when Kehyei actively resisted arrest during a foot pursuit. Kehyei turned, pointed a silver pistol at the officers, and fired shots, striking their patrol vehicle. Officers pursued Kehyei on foot as he fled behind Kindred Church, jumping fences and barricading himself in an alley. Kehyei was observed armed with the pistol throughout the pursuit. Officers established a perimeter and attempted verbal negotiations, urging Kehyei to surrender. Kehyei, refused and continued to hold the pistol, demanding water and threatening to shoot. Multiple officers repeatedly commanded Kehyei to drop his weapon over a loudspeaker during the standoff, as captured on body-worn camera. Officers observed Kehyei pointing a pistol at them from the fence. Officer Drey, positioned as a SWAT marksman, observed Kehyei raise and point the pistol directly at officers behind the fence. Officer Drey also observed Kehyei state that he was serious about shooting officers if he did not receive water. Officer Drey observed Kehyei extend his gun with both hands and lower his head to sight the gun. The totality of the circumstances left no doubt in Officer Drey's mind that Kehyei posed an imminent threat.

**Reasonableness of Officer Drey's Actions**

25.     Officer Drey's decision to use force was made in a rapidly evolving and high-stakes situation, consistent with the principles established in *Graham v. Connor*. Kehyei's actions—fleeing, barricading, and pointing a firearm at officers multiple times—posed an immediate and significant threat to the public and the officers on scene. Fearing for the lives of his fellow officers, Officer Drey's use of force was a measured and necessary response to an imminent threat.

26.     Given these factors, there is no aspect of the *Graham* analysis that supports the Plaintiffs' claims. Officer Drey's actions were consistent with established Fourth Amendment jurisprudence,

which recognizes that officers must often make split-second decisions in tense and uncertain circumstances. *Graham*, 490 U.S. at 396-97. As Officer Drey's actions were reasonable under the totality of the circumstances, there is no Fourth Amendment violation. The constitution does not require an officer to wait until a suspect is holding a weapon, pointing it, or shoots, to confirm the threat before resorting to deadly force. *Ramirez v. Knoulton*, 542 F.3d 124, 128-31 (5th Cir. 2008). "An officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm." *Batyukova v. Doege*, 994 F.3d 717, 725 (5th Cir. 2021) (quoting *Manis v. Lawson*, 585 F.3d at 843 (5th Cir. 2009)). Additionally, the Fifth Circuit has consistently held "officers use lethal force justifiably if they reasonably believe the individual is reaching for a gun." *Cloud v. Stone*, 993 F.3d 379, 387 (5th Cir. 2021). The Fifth Circuit has "adhered to this standard even in cases when officers had not yet seen a gun when they fired, or when no gun was ever found at the scene." *Id.*; *Reese v. Anderson*, 926 F.2d 494, 500-01 (5th Cir. 1991); *Manis*, 585 F.3d at 843; *Salazar-Limon v. City of Houston*, 826 F.3d 272, 278 (5th Cir. 2016); *Argueta v. Jaradi*, 86 F.4th 1084 (5th Cir. 2023).

**Officer Drey is Entitled to Qualified Immunity.**

27.     Officer Drey is entitled to qualified immunity as his actions did not violate Julius Kehyei's constitutional rights, nor did they contravene any clearly established law. Qualified immunity shields government officials from liability when their actions could reasonably have been believed to be lawful. *See Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). To overcome this protection, Plaintiffs must demonstrate both that a constitutional right was violated and that the right was clearly established at the time of the incident. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

28.     Even assuming *arguendo* that Officer Drey violated a Fourth Amendment right, no clearly established law would have placed him on notice that his actions were unconstitutional. The

Supreme Court has emphasized that existing precedent must place the legality of an officer's actions "beyond debate" such that every reasonable official would understand that their conduct violates a constitutional right. *See al-Kidd*, 563 U.S. at 741. Furthermore, in excessive force cases, "unless existing precedent squarely governs the specific facts at issue," the officer is entitled to qualified immunity. *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)).

29.    The specificity requirement is particularly significant in excessive force cases, where officers must make split-second decisions in rapidly evolving situations. *See Kisela*, 138 S. Ct. at 1153. As the totality of the circumstances guided Officer Drey's actions and no clearly established law would put Officer Drey's actions "beyond debate," Officer Drey is entitled to qualified immunity.

**Plaintiffs Have No Admissible Evidence to Oppose Summary Judgment.**

30.    Even if facts were disputed in this case, Plaintiffs cannot oppose summary judgment as any evidence produced is excludable under FRCP 37(c)(1) for failure to disclose. Federal Rule of Civil Procedure 37(c)(1) mandates automatic **exclusion** of any proffered evidence or testimony on a motion or at trial regarding any matter which a party failed to disclose under F.R.C.P. 26(a). Plaintiffs' disclosures omitted any damages computations and any documents. (Exhibit J). Plaintiffs have not produced a single document throughout the course of this litigation. Plaintiffs have not offered any justification whatsoever for their failure to disclose any documents.

31.    As Plaintiffs cannot create any genuine issue of material fact, summary judgment is warranted.

**Conclusion**

The material facts demonstrate that Officer Drey's actions were objectively reasonable under the totality of the circumstances. His use of force was consistent with established Fourth

Amendment jurisprudence, which recognizes the necessity of split-second decision-making in tense and uncertain situations. Furthermore, Officer Drey is entitled to qualified immunity, as no clearly established law would have placed him on notice that his conduct was unconstitutional. The City is likewise entitled to summary judgment on the Monell claims as there is no underlying constitutional violation. Accordingly, Defendants respectfully request that the Court grant their motion for summary judgment.

Respectfully submitted,

**ARTURO G. MICHEL**
**City Attorney**

CHRISTY L. MARTIN
Chief, Torts/Civil Rights

By:   */s/ Alexander Garcia*
Alexander Garcia
Assistant City Attorney
SBN:  24104429
FBN:  3852904
832.393.6293
Alexander.garcia@houstontx.gov
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby, 4th Floor
Houston, Texas 77002
832.393.6259 Facsimile

**Attorneys for Defendants**

## VERIFICATION

I hereby verify, under penalty of perjury, that the records attached as Exhibits A-J contain true and correct copies of the documents they are represented to be.

<u>August 4, 2025</u>          */s/ Alexander Garcia*
Date                                  Alexander Garcia

13

## **CERTIFICATE OF SERVICE**

I hereby certify that pursuant to the Federal Rules of Civil Procedure, a true and correct copy of the foregoing was filed via CM/ECF and served via electronic filing manager to all counsel of record.

*/s/ Alexander Garcia*
Alexander Garcia
