IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DOLORES SAMUEL, individually and on behalf of the estate of JULIUS PAYE KEHYEI, DECEDENT, KYLE SAMUEL and MAYA THORN as NEXT FRIEND OF MINOR, S.T., <br>     Plaintiffs, <br><br> V. <br><br> CITY OF HOUSTON, TEXAS, K. DREY, *Individually*, and JOHN DOE HPD OFFICERS 1-10, <br>     Defendants. | § § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:22-cv-2900 |

**PROPOSED JOINT PRETRIAL ORDER**

Pursuant to the Court's First Amended Scheduling/Docket Control Order dated August 19, 2024 (Dkt. No 60), Plaintiffs Dolores Samuel, individually, and Maya Thorn as Next Friend of S.T., the minor daughter of Julius Paye Kehyei and on behalf of the Estate of Julius Paye Kehyei, ("Kehyei") deceased, and the City of Houston and Kyle Drey, submit this Joint Pretrial Order.

    **I.**    **Summary of Claims and Defenses of Each Party**

**A.**    **Plaintiffs**

    1.    This is an action brought by the Plaintiffs against Defendants, the city of Houston, Texas, Kyle Drey and John Doe HPD Officers 1-10, for their use of excessive and deadly force resulting in the death of Kehyei under the color of law, in violation of his individual rights under the Fourth Amendment of the United States Constitution and, consequently, in violation of his civil rights pursuant to 42 U.S.C. § 1983 and § 1985.

Furthermore, Plaintiffs are entitled to recover damages arising from the decedent's wrongful death as applied under 42 U.S.C § 1983 and all other applicable laws complaining of the various acts listed below and for their wrongful death cause of action.

2. The Plaintiffs allege that former Mayor Sylvester Turner, the city council and then Houston Police Department Chief Art Acevedo[1], the City's final policymakers for the HPD (collectively referred herein as the "Policymakers"), vested with all powers of the City and with the determination of all matters of policy, vested with the authority for setting policies for city of Houston Police Officers, had a duty, but failed to implement and enforce such policies, practices and procedures for HPD that respected Kehyei's constitutional rights to protection and equal treatment under the law. The Policymakers implemented a use of force policy that is facially unconstitutional and failed to properly train, supervise, screen, discipline, transfer, counsel or otherwise control officers who are known, or who should have been known, to engage in the use of excessive force, including those officers repeatedly accused of such acts.

3. The Policymakers' failure to implement the necessary policies and the (de facto) implementation of unconstitutional policies, including policies for use of force and use of deadly force, unnecessarily caused Kehyei to die at the hands of a police officer who engaged in the excessive and deadly use of force when Kehyei did not pose an imminent threat to the officers or others, and in any event, there were reasonable alternatives to eliminate or alleviate the potential threat. Defendants City and then Chief

---

[1] Troy Finner became Chief of Police, upon Chief Acevedo's departure, in April 2021.

Acevedo's failure to implement the necessary policies and the implementation of facially unconstitutional policies deprived Kehyei of his rights under the Constitution and caused him unwarranted and excruciating physical pain and eventual death and caused Plaintiffs' mental anguish. Defendants Drey and John Doe HPD Officers 1-10 consciously disregarded the rights of Kehyei, knowing that the Policymakers would ratify and/or approve of their actions. For these civil rights violations and other causes of action discussed herein, Plaintiffs seek answers and compensation for damages.

4. On August 26, 2020, Houston Police officers were allegedly responding to a suspicious person call when they encountered Kehyei, who was not committing any penal offenses in the presence of the officers nor was there any credible evidence that he had. The Houston Police officers simply observed a Black man running. At no time did Keyhei fire any shots at any officers as alleged. Without knowing who Keyhei was, and without attempting to de-escalate the situation, multiple officers pursued Drey until an exhausted Kehyei stopped at a Church that was located near some apartments. Exhausted from running, Kehyei stood near an air condition condenser sat on a fence where he would have conversation with the officers. At one point, an exhausted and terrified Kehyei requested water and also asked what he did wrong. Kehyei's question was not responded to further adding to the confusion as to what was actually going on. After a period of time, Defendant Drey and other members of the SWAT team arrived at the scene. Until that point, there had not been any shooting. Within minutes of being on the scene, and without having any conversations with Kehyei or any of the Houston Policers on the scene, Drey shot Kehyei in the chest, causing Kehyei to fall to the ground

in "excruciating pain." Paramedics took Kehyei to the hospital, where he was later pronounced dead. In a news conference later that morning, then HPD Chief Acevedo indicated that no gun was recovered from Kehyei's person nor was a gun found at the scene. A gun was allegedly found after the shooting. However, that gun, with a six-round capacity, had six unfired cartridges and there was no scientific evidence that Keyhei fired a weapon. In addition to the gunshot wound to the chest, there was no explanation as to how Keyhei sustained blunt force injuries of the head, bilateral upper extremities, and back. Drey's justification for using deadly force rests on a disputed version of the facts, in which he claims he "feared for the safety of the officers." On the contrary, no other officer used deadly force during their interactions with Keyhei prior to Drey's arrival. Without any warning, Drey shot Keyhei. He did so without regard to whether Keyhei posed any immediate threat to anyone—in direct violation of what the constitution demands. *See Cole*, 935 F.3d at 453 (despite time and opportunity to try to de-escalate by issuing a warning, officers "chose to shoot first instead.").

5. Plaintiffs contend that Drey used excessive, deadly force in violation of Keyhei's Fourth Amendment rights. Specifically, Drey used excessive and unnecessary deadly force under the circumstances that was the cause of Keyhei's death. Plaintiffs further contend that Drey's conduct was not objectively reasonable under the circumstances because there was no immediate threat of serious physical injury to Drey, or anyone else on the scene. Plaintiffs contend that Drey is not entitled to qualified immunity for his conduct. Plaintiffs also contend that Drey's conduct was motivated by malicious or evil intent or demonstrated reckless or callous indifference to Keyhei's

constitutional rights. Plaintiff also contends that the City's use-of-force policy was the moving force behind Kehyei's death. Drey acted on the City's allegedly unconstitutional use-of-force polices when he used deadly force against Kehyei, which eventually led to Kehyei's death.

6.     The Plaintiffs contend that they are entitled to recover damages for theirs and Keyhei's conscious physical pain and mental anguish, as well as the funeral and burial expenses.  The Estate is also entitled to punitive damages.  The Plaintiffs are also entitled to entitled to the recovery of statutory attorney's fees pursuant to 42 U.S.C. § 1983.  In addition to these damages, the Plaintiffs should also be awarded interest thereon in the form of both prejudgment and post-judgment interest, taxable court costs, and such other and further relief, in law or in equity, both general and special, to which they may be entitled.

7.     No administration of the Estate of Julius Paye Kehyei is pending, and none is necessary.  S.T., through her next friend, Maya Thorn, is the sole beneficiary of Julius's estate, Julius's estate had no debts at the time of his death, he died without a will and there is no administration of his estate pending. Plaintiff Maya Thorn is therefore filing this wrongful-death and survival action on behalf of the Estate of Julius Paye Kehyei, pursuant to Tex. Civ. Prac. & Rem. Code §71.021.

### B. Plaintiffs' Contentions

1.     Defendant Drey violated Keyhei's civil rights under the Fourth Amendment of the United States Constitution by using excessive and deadly force.

2.     Additionally, Plaintiffs make the following claims against Defendants:

  a. Keyhei had not committed a crime at the time the officers started to pursue Keyhei.

  b. At no time did Keyhei point a weapon at Defendant Drey or any other person.

  c. Defendant Drey did not issue any commands to Keyhei prior to shooting Keyhei in the chest.

  d. Defendant Drey shot Keyhei in the chest for no lawful or justifiable reason.

  e. The City and Chief Art Acevedo failed to guide and limit officers discretion by developing and issuing a use of force policy that does fall below national policy standards, recommendations, and guidelines.

  f. Forensic evidence challenges Deputy Drey's version of the facts.

  g. Drey acted on the City's allegedly unconstitutional use-of-force polices when he used deadly force against Kehyei, which eventually led to Kehyei's death.

3. Moreover, despite claims by Defendants, Plaintiffs also allege the following:

  a) Keyhei did not threaten Defendant Drey or any other person at the time Drey shot Mr. Kehyei.

      b) The use of deadly force was not necessary and was excessive as Keyhei did not pose a significant threat of death or serious physical injury to Drey or others.

      c) No reasonably competent official would have concluded that the actions of Defendant Drey described herein would not violate Keyhei's constitutional rights.

**B.     Defendant Kyle Drey**

Defendant Kyle Drey denies that he violated Julius Paye Kehyei's Fourth Amendment rights through the use of excessive or deadly force. Drey's actions were objectively reasonable under the totality of the circumstances, as established by *Graham v. Connor*, 490 U.S. 386 (1989), given that Kehyei posed an imminent threat to the safety of officers and others. Kehyei fired multiple shots at civilians and officers, fled on foot while armed, refused multiple commands to drop his weapon, and repeatedly pointed a firearm at officers while threatening to shoot. Drey, positioned as a SWAT marksman, observed Kehyei raise the firearm, extend his arms into a shooting position, point the gun at officers who were attempting to negotiate with him to drop his gun, and lower his head to sight the weapon. Officer Drey fired a single shot to neutralize the imminent threat as Kehyei was aiming his firearm officers. Kehyei's actions and continuous threats are established by eyewitness accounts, body-worn camera footage, forensic evidence (including a recovered Smith & Wesson .38 Special revolver with Kehyei's DNA), and multiple officers and civilians' statements, including officers and civilians who were shot at by Kehyei.  Drey asserts qualified immunity, as his conduct did not violate clearly established law, and no precedent would have placed a reasonable officer on notice that such actions were unlawful in these circumstances. Plaintiffs have produced no evidence refuting the objective reasonableness of Drey's actions or the presence of an imminent threat.

C.  **The City of Houston, Texas**

The City of Houston denies liability under 42 U.S.C. § 1983, as there is no underlying constitutional violation by Officer Drey, whose actions were objectively reasonable and is protected by qualified immunity. Even assuming arguendo a violation, Plaintiffs cannot establish Monell liability, as there is no evidence of a City policy, custom, or practice that was the moving force behind any alleged violation, nor deliberate indifference by policymakers. The City's use-of-force policies comply with constitutional standards and national guidelines. There is no pattern of similar incidents demonstrating a need for different training or supervision, and Plaintiffs have failed to identify any specific deficiency in training, supervision, or discipline that caused Kehyei's death. Plaintiffs have produced no evidence supporting their claims against the City, and their failure to disclose damages computations warrants exclusion of such evidence under Fed. R. Civ. P. 37(c)(1).

## II.    Statement of Stipulated Facts

1. Jurisdiction exists in this court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought under 42 U.S.C. § 1983.

2. Venue is proper in this Court because the causes of action occurred within the Southern District of Texas, Houston Division.

3. Defendant Kyle Drey acted "under color" of the authority of the State of Texas.

4. Art Acevedo was the chief of Police for the Houston Police Department on August 26, 2020.

5. Defendant Drey shot Julius Keyhei once, resulting in his death.

6. Julius Keyhei died at the hospital.

### III.     List of Contested Issues of Fact

**A.     Plaintiffs**

1. Whether Julius Keyhei suffered an injury which resulted directly from Kyle Drey's use of force that was excessive to the need.

2. Whether Julius Keyhei posed an immediate threat of serious physical harm to Kyle Drey or others at the time that Drey shot Julius Keyhei.

3. Whether a reasonable police officer could have believed that the shooting and killing of Julius Keyhei was lawful in light of clearly established law and the information Kyle Drey possessed at the time he made the decision to shoot Julius Keyhei.

4. Whether Kyle Drey's conduct was motivated by malicious or evil intent or demonstrated reckless or callous indifference to Julius Keyhei's constitutional rights.

5. Whether Drey acted on the City's allegedly unconstitutional use-of-force polices when he used deadly force against Kehyei, which eventually led to Kehyei's death.

6. Whether the Estate of Julius Keyhei suffered conscious physical pain and mental anguish and incurred funeral and burial expenses as a result of the shooting by Kyle Drey and, if so, the amount of those damages.

7. Whether the Estate of Julius Keyhei is entitled to punitive damages against Kyle Drey and, if so, the amount of such damages.

8. Whether the Plaintiffs suffered conscious physical pain and mental anguish, loss of consortium and household services and other actionable damages as a result of the shooting by Kyle Drey and, if so, the amount of those damages.

9. Whether Plaintiffs incurred reasonable and necessary attorneys' fees in the prosecution of this case pursuant to 42 U.S.C. § 1983 and, if so, the amount of those fees.

10. Whether Julius Keyhei fired shots at a civilian vehicle and at pursuing officers, striking a marked police unit.

11. Whether the Smith & Wesson .38 Special revolver found at the scene had ever been fired.

12. Any contention above that has been improperly designated as a disputed issue of fact when it should be considered a disputed issue of law should be re-designated as such.

**B.  Defendants**

1. Officers observed Kehyei matching the description provided by witnesses, armed with a chrome-colored pistol, and fleeing on foot.

2. Kehyei fired shots at a civilian vehicle and at pursuing officers, striking a marked police unit.

3. Kehyei fired shots at a civilian vehicle and at pursuing officers, striking a marked police unit.

4. Officers pursued Kehyei to the area behind Kindred Church at 1327 Hyde Park Boulevard, where he barricaded himself on a fence.

5. Multiple officers observed Kehyei armed with a firearm

6. Multiple officers commanded Kehyei to drop his weapon as captured on body-worn camera footage.

7. SWAT officers, including Defendant Drey, arrived and established positions to contain the scene.

8. A Smith & Wesson .38 Special revolver was recovered approximately one foot from Kehyei's body after the shooting.

9. Forensic testing confirmed Kehyei's DNA on the revolver, and spent cartridge cases matched those fired earlier in the incident.

10. No evidence has been produced by Plaintiffs refuting the presence of the firearm or the threat posed by Kehyei.

11. Whether Kehyei was armed with a firearm and fired shots at civilians and officers, as supported by witness statements, body-worn camera footage, and forensic evidence.

12. Whether Kehyei posed an imminent threat by previously shooting officer and civilians, refusing commands, barricading himself, threat to shoot officers, and raising the firearm toward officers.

13. Whether Officer Drey reasonably perceived Kehyei to pose a serious threat of imminent threat of harm to himself, other officers, or bystanders.

14. Whether Drey's use of a single shot was objectively reasonable under the totality of the circumstances, including Kehyei's violent crimes and active resistance.

15. Whether Plaintiffs have any admissible evidence refuting the defense evidence or supporting their version of events.

16. Whether a City policy, custom, or failure to train/supervise was the moving force behind any alleged violation.

17. Whether Plaintiffs have any damages given their failure to disclose computations under Fed. R. Civ. P. 26(a).

18. Whether Maya Thorn on behalf of S.T., has capacity to bring claims on behalf of the estate of Kehyei.

19. Whether an administration was pending that tolled limitations for claims on behalf of the estate.

20. Whether claims are barred by the statute of limitations.

### IV.   List of Contested Issues of Law

**A.   Plaintiffs**

1. Whether the clearly established law at the time prohibited the use of deadly force to prevent escape when that escape poses no immediate threat to the officer or to others;

2. Whether Kyle Drey is entitled to qualified immunity; and

3. Whether the failure by the City to provide adequate training on the use of force caused a use of excessive force against Keyhei.

4. Any contention above that has been improperly designated as a disputed issue of law when it should be considered a disputed issue of fact should be re-designated as such.

**B.   Defendants**

1. Whether Drey's actions were objectively reasonable under *Graham v. Connor*, 490 U.S. 386 (1989), given the imminent threat or reasonable perception of an imminent threat of serious harm.

2. Whether Drey is entitled to qualified immunity, as no clearly established law prohibited his conduct in these circumstances.

3. Whether the City is liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), absent an underlying violation or evidence of a policy/custom as moving force.

4. Whether Plaintiffs' failure to disclose damages under Fed. R. Civ. P. 26(a) warrants exclusion of evidence and dismissal under Rule 37(c)(1).

5. Whether Maya Thorn on behalf of S.T., has capacity to bring claims on behalf of the estate of Kehyei.

## V.     Estimated Length of Trial

1. Following jury selection and after the panel has been sworn and heard opening statements, the parties believe that the length of the trial of this case will be:

**Plaintiff** – 3-4 days.

**Defendants** – 3-4 days.

2. This case is set for a jury trial.

## VI.    Additional Matters that Might Aid in the Disposition of the Case

**A.    Plaintiffs**

1. Plaintiffs intend to submit Juror Questionnaires in Advance of Voir Dire. To the extent this is not already the Court's intention, Plaintiffs respectfully request that the questionnaire be completed by each juror upon arrival at the courthouse, prior to voir dire and that, upon the collection and delivery to counsel of those questionnaires and prior to voir dire, that counsel be given at least thirty (30) minutes to review the questionnaires.

2.      Plaintiffs anticipate that in addition to use of the Court's equipment, they will use laptops, overhead projectors, DVD players, easels, trial boards and speakers.

3.      Plaintiffs wish to have the issue of attorneys' fees handled post-verdict.

**B.     Defendants.**

1. Defendants have filed a Motion for Summary Judgment and a Motion to Exclude Evidence of Damages (with request for dismissal). Resolution of these motions may dispose of the case or limit evidence at trial.

**VII.    Exhibits and Witness List**

1.    **Trial Exhibits**

The Parties are submitting their exhibits as attachments.

2.    **Witness Lists**

The Parties are submitting their witness lists as attacments.

Signed this _____ day of _____, 2025.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

Respectfully submitted,

By: */s/ Daryl K. Washington*
**Daryl K. Washington**
State Bar No. 24013714
**Washington Law Firm, PC**
325 N. St. Paul St., Suite 3950
Dallas, Texas 75201
214-880-4883
214-751-6685 - fax
dwashington@dwashlawfirm.com

*Attorneys for Plaintiffs*

By: */s/ Alexander Garcia*

*Attorneys for Defendants, Kyle Drey and the city of Houston, Texas*

## Certificate of Service

I hereby certify that on **August 4, 2025**, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this notice as service of this document by electronic means:

*/s/ Daryl K. Washington*
**Daryl K. Washington**